## DECEMBER TERM, 1842.

### George W. Latham v. Morgan & Fitz.

Where a person is seeking relief in equity, against his grantor in a deed, on account of a failure in title to the property conveyed by the deed, a general charge of *defect of title*, without stating in what particular that defect consists, is not a sufficient charge to entitle him to any relief therefor.

Where the grantee in a deed is let into possession under his deed, and no eviction actual or threatened is charged, the allegation of the *insolvency* of the grantor, will not be sufficient to entitle the party to relief, against a defect of title to the property.

The words, "*grant, bargain, and sell,*" in a deed, do not, under the statute of this State amount to a general warranty, or a covenant of seisin ; but merely that the grantor has not done any act, nor created any incumbrance, whereby the estate might be defeated.

The complainant, in this case, states, that on the 26th of December, 1835, he purchased, of Morgan & Fitz, land, at the price of $21,000, payable, $7000 in cash, $7000 1st January, 1837, $7000 1st January, 1838, all secured by notes dated 26th Dec., 1835 : that by deed of trust to H. G. Johnson and Gideon Fitz, he conveyed, on the same day, land, to secure the payment : that the first two notes have been satisfied : that the trustees are about to sell the land to satisfy the remaining sum : that Morgan & Fitz, at the time of his purchase, assured him that he was getting land entirely free from difficulty, as to title : that by their deed they warrant " a good and sufficient title, free from all claims whatever : " that the title to all parts of said tract of land is involved in difficulty and obscurity; and, instead of being free from all difficulty, seems to be liable to be claimed by all persons ever owning it prior to Morgan & Fitz : that he subscribed stock in the Union Bank, and the title was considered defective, and the stock could not be had on it : that he had contracted to sell the land on fair terms, but, in consequence of defects of title, lately disclosed, had to take it back : that Morgan & Fitz, he believes, are insolvent, &c.

He prays a rescission of contract, an injunction against the sale by the trustees, and general relief. The bill was sworn to by an agent of the complainant, " to the best of his knowledge and be-

lief." The injunction was granted, and the defendants demur to the bill, and move to dissolve the injunction ; and upon this motion, and the demurrer, the case was submitted to the Chancellor.

*Briggs*, for the complainant.

[Mr. Briggs was the original counsel in the cause who filed the bill in the case ; he furnished the Court, however, with no brief, on the hearing of this motion.]

*W. Thompson*, for defendants.

The motion, in this case, is made to dissolve the injunction for the want of equity on the face of the bill, because the bill is not properly sworn to.

Complainant states, that on the 26th December, 1835, he purchased of the defendants, Morgan & Fitz, a tract of land in Hinds county, designated in the exhibit to his bill. Purchase-money, \$21,000, payable as follows : \$7000 at the execution of the deed, \$7000 on the 1st of January, 1837, and \$7000 on 1st January, 1838, all evidenced by promissory notes, dated 26th December, 1835, and the payment secured by deed of trust of same date, made to H. G. Johnston and Gideon Fitz, as trustees ; two first notes settled, and but one remains due. The trustees have advertised the land for sale to pay the third note.

Complainant protests against the sale, as he says, on the following grounds :

1st. In purchasing the land, he was assured that he was getting land free from difficulty as to title.

2d. That the deed made to him contains a warranty of title.

3d. That " the title to all the parts of said land is involved in difficulty and obscurity, and liable to be claimed by any or all persons ever owning them prior to the deed of Morgan & Fitz."

The bill states, that complainant cannot go into an accurate specification in this matter of title, but hopes it will be sufficient to say, he could not procure stock on it in the Union Bank.

Complainant states, that even if a title to a part of said land was in Morgan & Fitz, certain lots containing $361\frac{90}{100}$ acres, a part of said tract, and designated as S. ½ sec. 20, and S. W. ¼ N. W. ¼

same, sec. 16, range 2, west, are involved in insuperable difficulty ; that said vendors never had a clear or good title to the same.

He also avers, that this lot of $361\frac{90}{100}$ acres is perhaps the only useful and valuable part of it : without this, he never would have purchased it, nor would any sensible man have done it. The bill vaguely alleges a wilful suppression of the defects of title : complainant states he had sold the land, and had to take it back, because he could not make a good title. The bill prays for a rescission of the contract.

Complainant was let into possession and now occupies the land, as is shown by his own Exhibit A, the advertisement of "the plantation now occupied by said Latham," and his Exhibit B, the deed of trust, by the terms of which he is to retain the possession, and to receive the rents and profits.

It is conceived, from the very vague and unsatisfactory statements of the bill, that complainant's only object, in obtaining the injunction, is delay. Complainant purchased the land in 1835, and was let into possession, and at the same time received a deed with covenants warranting the title, and has had the use and occupation for more than four years, and there is not an insinuation that he has ever been disturbed or molested in the possession, or that his title has ever been questioned by any one pretending to claim adversely. Although he charges, that the title of defendants, Morgan & Fitz, is not good, to at least a part of the land, yet he does not pretend to state the nature of the alleged defect of title ; nor does he state in whom there is an adverse title. The bill does not charge insolvency of the vendors in a way, as we conceive, that should have any influence on the motion to dissolve : in the last of the bill it is said, "your orator believes said Morgan & Fitz to be insolvent, and so charges." The fact of insolvency should be stated as a substantive charge, and made, at least, "from information and belief ;" and, from the rule established, and the principle in analogous cases, it is very questionable whether the charge upon "information and belief" alone, would be sufficient. It certainly cannot be good, when made in this intangible, unmeaning way, that he "believes, and so charges."

The vendors live in the country (as the bill shows, or should

show, for the residence of parties is required by the rule of Court, to be stated). The complainant does not state that he ever applied to them for information in relation to any supposed defects of title, or a request that the same should be remedied, which application good faith would require should have been made, after receiving the deed, before he endeavored to withhold the purchase-money ; and more especially, when complainant has had such long and uninterrupted enjoyment of the premises.

Upon an executed contract, the vendee cannot resort, except under peculiar or extraordinary circumstances, to a court of equity, but must rely upon the remedy which the covenants in his deed give him. Upon this subject, the Court is referred to Fonblanque, 1 book, page 288 (top paging), and the note thereto, and cases cited. See also 3 Marsh. 334 ; 3 J. J. Marsh. 583, 701 ; 1 J. J. Marsh. 481, 483 ; 4 Bibb. 273 ; 4 Monroe, 75.

As to the swearing to the bill, if the complainant had sworn to it himself, he would have been required to have stated, that the facts set forth, as of his own knowledge, are true, and those stated from information, he believes to be true. The legislature have said, no injunction should be granted, unless the chancellor shall be satisfied of the complainant's equity, either by affidavit, certified at the foot of the bill, that the allegations thereof are true, or by other means. Now, a person who signs the affidavit as agent for G. W. Latham, swears to the "truth of the foregoing bill of complaint," so far as he is informed, and verily believes. We contend, that this is no such swearing as the law requires, and that there is no precedent for it : that it is not enough to satisfy the mind of the chancellor of the truth of the facts set out in the bill.

*Mayes*, for complainant, in reply.

It is contended by the defendant, with reference to the bill,

1st. That it is manifest, from the vague and unsatisfactory statements of the bill, that the complainant's *only* object is delay. I answer, the bill seeks to rescind. If our only object is delay, the defendants may, by closing with our proposition to rescind, defeat at once that only object, and drive us to the necessity of paying the money, or submitting to a sale by the trustees. For the Court (if

the defendants put us to our election. to pay or rescind) will compel us to make that election speedily, or we will speedily make it without being forced to do so.   We might well retort, that the complainant's only motive for demurring, was to avoid exposing his fraud by exhibiting his papers, and thus leading to a rescission of the contract.

2d.  The vagueness of the statements of the bill is objected to. It is alleged, positively, that the complainant believes " that no good title has been given or can be given him by the vendors, to this tract of land, or any part thereof."   By the demurrer, then, it is admitted, " that no good title can be given to any part of the land." Can a court of equity say, although the vendees make assurances that they have good title, and have not and cannot make title to any part, and are insolvent, they may proceed with a good conscience (and consistently with equity) to enforce the deed of trust ?

3d.  But it is said, in defendants' brief, " the complainant purchased the land in 1835, and was put into possession, and at the same time received a deed with covenants of warranty, and has had the use and occupation for now more than four years.   How do we know anything of this possession, or that the use and occupation continues ? it nowhere appears in the record.   For ought we know, it is waste land, purchased on speculation, without a stick cut on it. If the facts are as stated, let the defendants answer, and say so, and then avail themselves of it.   But now, we know nothing respecting possession, or use : we only learn, from the deed of trust, that the trustees were to permit him to have it.

4th.  It is said, that we have not applied to defendants for information of any alleged defects of title.   We here apply, in the most solemn form ; we say to them, in our bill, you had no good title, you can never make one ; we call on you, if this is not true, to exhibit it.   We have endeavored to get stock in the Union Bank, and, being unable to show title, lost the stock.   We made a good contract for the sale of the land, but could not show title, and had to abandon the contract.   Now, show title, if you have it, for we are unable to find it out.   Are we to show what they have not, or shall they be held to show what they have ?

5th.  But it is said, it is an executed contract, and equity will not

Latham *v.* Morgan & Fitz.

enjoin the payment of the purchase-money on an executed contract; that the party must be evicted, &c.

The authorities referred to do not apply, for two reasons.

1st. They are cases where the party has, by the covenants in the deed, provided himself with a legal remedy, which is adequate. Here, although we have covenants, they are unavailing, for the defendants are insolvent.

2d. They are cases where the covenants are not already broken. But, by the laws of Mississippi, every conveyance of land imports a covenant of seisin. See Laws of Mississippi, page 304. The covenant of seisin is here broken, if the allegations of the bill be true; and a court of equity would as soon interpose (the covenant of seisin being broken), as it would where there was only the general warranty, and an eviction had taken place, even if insolvency was not alleged. Not only is it apparent, that the covenants in the deed are broken, so that we now have cause of action at law, but that we cannot have the fruits of a judgment, by reason of insolvency. The deed, containing the words, "grant, bargain, and sell," which raise the covenant of seisin, is not exhibited, and this may remove the force of the last ground; but if we may go out of the record to learn that defendants were let into possession, and still retain it, we may go out of it to learn that there was a covenant of seisin.

But a conclusive argument, it is conceived, is, that the defendants have sold land, that the land is valuable, but the title defective, or involved in such doubts, that neither would the bank receive it, nor a purchaser from the complainant accept it; and, these clouds hanging over the title, the vendors seek to force it into market in such a condition, that a sacrifice would inevitably ensue. They are, in conscience, bound to remove these obstructions to its bringing a fair price, before they bring it into market. Taking the bill to be true, the defendant, by his demurrer, says to the chancellor: true, I did induce the complainant to believe he obtained a good and perfect title; true, I warranted that it was such; true, the title is imperfect and invalid, and never can be perfected; true, I have received $14,000 on this sale; and, true, I am insolvent. Now, I ask of your Honor, in equity, to permit me to proceed and sell the

Latham *v.* Morgan & Fitz.

land for the remaining sum of the purchase-money, although I can-not refund it, and although, under the circumstances, the land must be sacrificed. Do not require me to exhibit a valid title, so that the man I deceived may get a fair price, but let me sacrifice my vendee, if the title is good, by withholding the exhibition of that good title. I know the state of the title, the world does not, and I can make a fair speculation, as, under the circumstances, there can be no fair competition ; and, if it is invalid, I also have an advan-tage, for, by purchasing in the land, I can never be sued on my covenants of warranty, &c., they coming to me from my vendee, with the land. I will thereby save the $14,000, which I have re-ceived for land to which I have no title.

The Chancellor will surely see, that the title is free from dispute, so that the land may come fairly into market. The trustees are trustees for both parties ; they should not bring the property into market, without seeing that all impediments to a fair price were removed ; and for them to sell land, the title being defective, would be a fraud on the purchasers. It would be inequitable for them to sacrifice an honest vendee, who has been deceived by his vendor, and thus to put a fraudulent vendor in possession of the fruits of his misrepresentation. It would be equitable in them to say to him, exhibit a fair title to the property you sold, that your vendee may have an opportunity of getting a fair price, and that bid-ders may know what they are buying, whether lawsuits, expense, and vexation, or an unincumbered estate ; or sales may be re-strained in all cases where they are inequitable, or may operate a fraud on the rights and interests of third persons. 2 Story's Eq. 224. All injunctions are discretionary, and granted on the cir-cumstances of the case. Ambl. 99 ; 2 John. Ch. R. 202. Of late granted more liberally than formerly. 7 Ves. 307.

As to the objection that the bill is not sworn to, I answer, if the affidavit of the party would be sufficient, *a fortiori*, will the affidavit of a credible disinterested person. If the affidavit made is defective in substance, the Court will give time to make a suffi-cient affidavit. That mode was considered sufficient by the judge who granted the injunction, and if the Chancellor be of a different opinion, he will only make an order, that the injunction stand dis-

solved, unless by a given day such affidavit be made as he may deem sufficient.

CHANCELLOR. The bill in this case makes a general charge of defect of title, without stating in what particular it consists, or in whom the adverse or paramount title is vested. This is a fatal defect. The complainant is bound to set forth in what the defect of title consists, that the Court may determine whether it amounts to an actual defect or not. This objection to the bill, of itself, would demand a dissolution of the injunction. But the complainant is not entitled to the relief he asks, for another and distinct reason. He shows, that he has received a deed with covenants of warranty, and his exhibits made a part of the bill, show also, that he was let into possession under his deed. No eviction, actual or threatened, is charged. Under such circumstances, the authorities are uniform, that he is not entitled to the interposition or aid of this Court. It is true, there is a charge of his belief of the insolvency of his vendors; even if this insolvency were positively charged, under the repeated decisions of this Court, it would not be sufficient.

It is insisted, however, and assumed, that the deed containing the words "grant, bargain, and sell," amount to a covenant of seisin, under the laws of Mississippi; that that covenant is here shown to have been broken, and that it is tantamount to an eviction at law, under the covenant of warranty; which state of things would induce this Court to interfere.

I find that the same language used in our statute, is used in the statutes of Pennsylvania, Delaware, Illinois, Indiana, Missouri, and Alabama, viz: that the words "grant, bargain, and sell" in conveyances in fee, shall amount to a covenant, "that the grantor was seised of an estate in fee, freed from incumbrances done or suffered by him," and for quiet enjoyment against his acts. Yet the Supreme Court of Pennsylvania, in 2 Binney's Rep. 95, held, that those words did not amount to a general warranty, but, they were qualified to mean merely, that the grantor had not done any act, nor created any incumbrance, whereby the estate might be defeated; and to this extent only, I apprehend, would a sound construction of the statute of Mississippi go.

The precise language of the statute (How. & Hutch. 349, sec. 32) is, " In all deeds or conveyances, whereby an estate of inheritance in *fee simple* shall hereafter be limited to the grantee and his heirs, the words ' grant, bargain, and sell' shall be adjudged an express covenant to the grantee, his heirs, and assigns, to wit : that the grantor was seised of an indefeasible estate in *fee simple*, freed from incumbrances done or suffered from the grantor, as also for quiet enjoyment against the grantor, his heirs, and assigns." To my mind, nothing can be plainer, than that these words do not amount to a general warrantee, and that their legitimate meaning cannot be extended further than to import, that the grantor has not incumbered the estate. The words are adjudged an express covenant of what ? That the grantor was seised of an estate, freed from incumbrances done or suffered by the grantor ; and a covenant for quiet enjoyment by the grantee, as against the grantor, his heirs, and assigns. It extends no further. It embraces the claims of no others. I am not disposed to extend its construction, and interpret words, that bear no such meaning on their face, beyond what the strictest construction of the statute will justify.

The motion to dissolve the injunction must be sustained.